IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| SERGIO LUNA RODRIGUEZ, § | | |
| TDCJ #342072, § | | |
|     Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. G-06-0768 | |
| § | | |
| GARY JOHNSON, *et al.*, § | | |
| § | | |
|     Defendants. § | | |

## **MEMORANDUM AND ORDER**

State inmate Sergio Luna Rodriguez (TDCJ #342072) has filed complaint under 42 U.S.C. § 1983, alleging violations of his civil rights. At the Court's request, Rodriguez has also provided a more definite statement of his claims. (Doc. # 19). The defendants have filed a joint motion for summary judgment. (Doc. # 22). The plaintiff has not filed a response to the motion and his time to do so has expired. After reviewing all of the pleadings, the summary judgment record, and the applicable law, the Court grants the defendants' motion and dismisses this case for reasons that follow.[1]

## **I.    BACKGROUND**

Rodriguez is currently incarcerated at the Terrell Unit in Rosharon, Texas, where he is serving a life sentence. Rodriguez's complaint concerns his medical condition and treatment pursuant to a prison policy that governs the provision of care for inmates who have

---

[1] On October 25, 2007, this case was reassigned to United States District Judge Melinda Harmon pursuant to General Order 2007-10. The case is being handled by the undersigned by agreement of the judges.

been diagnosed with Hepatitis C, which is a viral disease that causes inflammation of the liver.[2] Rodriguez also complains about a separate policy that affords early release on parole for prisoners suffering from terminal illness.

According to his more definite statement, Rodriguez was admitted to TDCJ initially in 1974. Rodriguez reports that he was first diagnosed with Hepatitis C in 1987, while he was in custody at the Ellis Unit. Rodriguez explains that he contracted the disease as the result of either "drinking alcohol" or from getting tattoos. It appears that Rodriguez was released from custody sometime after he was diagnosed with Hepatitis C. Rodriguez reports that he was re-admitted to TDCJ most recently in December of 2000. In "January or February" of 2001, Rodriguez states that he was "re-diagnosed" with Hepatitis C. By this time, his condition had "escalated" to cirrhosis of the liver.[3]

---

[2] Hepatitis C, formerly known as "non-A, non-B hepatitis," is a viral disease that can be transmitted parenterally, such as through a blood transfusion, sharing of needles among drug users, or "other intimate personal contact with an infected person." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 856 (31st ed. 2007). Approximately 50% of acutely infected persons develop chronic hepatitis, which is "usually mild and asymptomatic" but runs "a variable course; there may be long asymptomatic periods with periods of symptomatic hepatitis and jaundice; there may be a variety of extrahepatic manifestations; or the disease may progress to cirrhosis and liver failure." *Id.*

[3] Cirrhosis describes "any of a group of chronic diseases of the liver characterized by loss of normal lobular architecture with fibrosis, and by destruction of parenchymal cells and their regeneration to form nodules." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 371 (31st ed. 2007). "These diseases have long latent periods, usually followed by sudden abdominal swelling and pain, mehatemesis, dependent edema, or jaundiced." *Id.* "In advanced stages, prominent symptoms include ascites," which is characterized by excess serous fluid, "jaundice, portal hypertension, and central nervous system disorders that may end in hepatic coma." *Id.*

Rodriguez claims that he requested "anti-viral therapy" in the form of Interferon and Ribavarin on December 14, 2001, July 8, 2002, and January 14, 2003, but that his requests were denied. Rodriguez was reportedly told that his liver cirrhosis was "to[o] far advanced for any type of treatment." Instead of treating him with anti-viral therapy, Rodriguez complains, his liver enzymes were monitored at regular intervals pursuant to the prison policy for treating Hepatitis C (identified as Policy B-14.13), which was reportedly developed based on a "consensus conference statement issued by the National Institute of Health in 1997, and formulated by a panel of public health and infectious disease experts from TDCJ, the University of Texas Medical Branch ("UTMB"), and the Texas Tech University Health Sciences program.

In the pending civil rights complaint, which is dated November 30, 2006, Rodriguez sues numerous officials employed by TDCJ, UTMB, and Texas Tech who are allegedly responsible for drafting Policy B-14.13, including former TDCJ Executive Director Gary Johnson; Executive Director of TDCJ Managed Health Care Allen Hightower; Deputy Director of TDCJ Managed Health Care Dr. Linnette Linthicum; Director of TDCJ Preventive Medicine Dr. Michael Kelley; Associate Medical Director for UTMB Correctional Managed Care Dr. Owen J. Murray; Vice President of UTMB for Community Outreach Dr. Ben Raimer; UTMB Gastroenterologist Dr. Emil Mikovsky; and Medical Director of Texas Tech University Health Services Dr. William Gonzalez. Rodriguez claims, in essence, that the policy drafted by these officials is constitutionally inadequate because it fails to afford proper care for his condition.

In addition to these above-referenced policymakers, Rodriguez sues three health care workers employed by TDCJ at the Ramsey I Unit, where Rodriguez was formerly incarcerated, including: Dr. Sandra Donahue; Physicians Assistant Cathy Frayer; and Dr. Natasha Dumas. Rodriguez claims that these individuals were responsible for evaluating and diagnosing his condition while he was in custody at the Ramsey I Unit, but failed to provide adequate medical care by following Policy B-14.13. Rodriguez elaborates in his more definite statement that, in December of 2006, he began to experience symptoms of "end-stage decompensated liver [cirrhosis]." According to Rodriguez, this entails "constant pain in the upper right quadrant of his abdomen" and gallbladder, "fatigueness [sic], lactic acidosis, edema, ascites, itching, encephalopathy," anemia, and other symptoms. Rodriguez insists that, if he had received a anti-viral drug therapy regimen when he first requested this treatment in December of 2001, it might have prevented his disease from progressing and given him a "chance at a more longer life."

In addition to his complaint about Policy B-14.13, Rodriguez complains that he has been denied a "medical release" or parole under § 508.146 of the Texas Government Code, which reportedly authorizes "medically recommended intensive supervision." Rodriguez requests release on medical parole so that he "and family member[s] can be allowed to be tested for [a] possible liver transplant[.]" Alternatively, Rodriguez reasons that a medical furlough would allow him to be placed on "the liver transplant list." Rodriguez complains that the defendants have authority to release him on medical parole, pursuant to § 508.146, but that they have declined or refused to do so. Rodriguez claims, therefore, that he has been

4

denied treatment in the form of a liver transplant as a result of the defendants' refusal to authorize his early release.

In his pending civil rights complaint under 42 U.S.C. § 1983, Rodriguez complains that he has been denied care in violation of the Eighth Amendment, the Americans with Disabilities Act, and the Rehabilitation Act. Rodriguez seeks compensatory and punitive damages. He also seeks declaratory and injunctive relief. The defendants have filed a joint motion for summary judgment, arguing that Rodriguez is not entitled to relief.[4] (Doc. # 22). The parties' contentions are discussed further below under the governing standard of review.

## II.    STANDARD OF REVIEW

The complaint in this case is governed by the Prison Litigation Reform Act (the "PLRA"), which mandates the dismissal of a prisoner's civil rights complaint under the following circumstances. Upon initial screening of a prisoner civil rights complaint, the PLRA requires a district court to scrutinize the claims and dismiss the complaint, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted;" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). A reviewing court may dismiss a complaint for these same reasons "at any time" where a party proceeds *in forma pauperis*. 28 U.S.C. § 1915(e)(2)(B) (mandating dismissal where the complaint is "frivolous or

---

[4]    The defendants have also filed a motion for partial dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which is limited to the defense of official immunity. (Doc. # 21). This motion is moot for reasons discussed further below.

malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief"). The PLRA also provides that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c).

The defendants have filed a motion for summary judgment, arguing that the plaintiff's claims fail as a matter of law. Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Under Rule 56, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party bears the burden to show that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Capitol Indem. Corp. v. United States*, 452 F.3d 428, 430 (5th Cir. 2006).

Once the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). The nonmovant cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). To survive summary judgment, the nonmovant must submit or identify evidence

in the record to show the existence of a genuine issue of material fact as to each element of the cause of action. *See Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citation omitted). Facts and inferences reasonably drawn from those facts should be taken in the light most favorable to the non-moving party. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). Where the non-moving party fails to establish "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," no genuine issue of material fact can exist. *Celotex*, 477 U.S. at 322-23; *Whiting v. University of Southern Miss.*, 451 F.3d 339, 345 (5th Cir. 2006).

The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *See Morris v. Covan Worldwide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998); *see also Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994) ("Unsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence."). Likewise, the nonmoving party "cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citations omitted). In the absence of proof, a reviewing court will not assume that the nonmovant could or would prove the necessary facts. *See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir. 1995). Although the plaintiff proceeds *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his

burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

The plaintiff has not filed a response to the motion for summary judgment and the time for him to do so has expired. According to this Court's local rules, responses to motions are due within twenty days, S.D. TEX. R. 7.3, unless the time is extended. Any failure to respond is taken as a representation of no opposition. S.D. TEX. R. 7.4. The Court specifically directed the plaintiff to respond within thirty days to any dispositive motion filed by the defendants or face dismissal for want of prosecution. (Doc. # 9, ¶ 4). Notwithstanding the plaintiff's failure to respond, summary judgment may not be awarded by default. *See Hibernia Nat'l Bank v. Administration Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985). "A motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule." *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995) (citing *Hibernia Nat'l Bank*, 776 F.2d at 1279). In that regard, the movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the reviewing court may not grant the motion regardless of whether any response was filed. *See Hetzel*, 50 F.3d at 362 n.3. Nevertheless, in determining whether summary judgment is warranted, the district court may accept as undisputed the facts set forth in the unopposed motion. *See Beard v. Banks*, — U.S. —, 126 S. Ct. 2572, 2577 (2006); *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).

### III. DISCUSSION

#### A. Statute of Limitations

Rodriguez claims that he requested care for his condition, but that treatment was refused, on December 14, 2001, July 8, 2002, and January 14, 2003. The defendants argue that the complaint, which is dated November 30, 2006, is untimely because it is outside the governing statute of limitations.

Civil rights claims brought under 42 U.S.C. § 1983 are governed by the two-year statute of limitations provided by Texas law. *See Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001); TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a). This means that once the claims accrued the plaintiff had two years to file a civil rights complaint concerning these allegations. *See Gonzalez v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998) (noting that a cause of action accrues, so that the two-year statute of limitations begins to run, when the plaintiff knows or has reason to know of the injury which is the basis of the action).

To the extent that Rodriguez complains about the denial of medical care, the pleadings show that was aware of the facts giving rise to that claim no later than January of 2003. Rodriguez's complaint is dated November 30, 2006, which is well outside the two-year limitations period for the allegations that form the basis of his claims. Claims brought that are plainly barred by the applicable statute of limitations are subject to dismissal as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i). *See Gartell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993). Because Rodriguez waited more than two years to file suit from the time his claims accrued, his allegations that he was denied medical care on December 14, 2001, July 8, 2002,

and January 14, 2003, are untimely and subject to dismissal for this reason. *See id.* The defendants are entitled to summary judgment on this issue.

### B.      Exhaustion of Administrative Remedies

To the extent that his claims are not untimely, the defendants argue that the complaint in this case is barred from review because Rodriguez has failed to otherwise comply with the exhaustion requirement found in the PLRA, 42 U.S.C. § 1997e(a), by presenting his claims for consideration by prison officials before filing suit. Under the PLRA, codified as amended at 42 U.S.C. § 1997e(a), an inmate is required to exhaust administrative remedies for all "action[s] . . . brought with respect to prison conditions" before filing a civil rights suit in federal court under 42 U.S.C. § 1983 or "any other Federal law." The Supreme Court has held repeatedly that § 1997e(a) requires exhaustion of *all* administrative procedures before an inmate can sue in federal court. *See Booth v. Churner*, 532 U.S. 731, 741 (2001); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding that the PLRA requires exhaustion of all claims concerning prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong).

The defendants provide a copy of the Offender Orientation Handbook, which details the administrative grievance procedure in place at TDCJ. (Doc. # 22, Exhibit A). As this evidence reflects, TDCJ has a formal two-step administrative grievance process. *See Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998) (outlining the two-step procedure, which at Step 1 entails submitting an administrative grievance at the institutional level followed by a Step 2 appeal if the result is unfavorable). A Step 1 grievance, which is reviewed by

officials at the inmate's assigned facility, must be filed within fifteen days of the alleged incident or challenged event. *See Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). Once an inmate receives a response to his Step 1 grievance, he then has up to ten days to file a Step 2 grievance to appeal an unfavorable result. *See id.* Step 2 grievances are reviewed at the state level. *See id.*; *Wendell*, 162 F.3d at 891. An inmate must pursue a grievance through both steps of the administrative process for his claim to be considered exhausted. *See Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).

The defendants have provided copies of all of the grievances filed by Rodriguez within the applicable limitations period. (Doc. # 22, Exhibit B). A review of the exhibits reflects that Rodriguez failed to exhaust his administrative remedies in this instance in compliance with the process available at TDCJ. The record shows that, prior to filing this lawsuit, Rodriguez filed eight step 1 grievances, but that none of them relate to the claims of inadequate medical care that he presents in his complaint: (1) Grievance #2005130225, dated March 29, 2005, involved a dispute over personal property; (2) Grievance #2006085435, dated January 13, 2006, complained about a disciplinary issue; (3) Grievance #2006150881, dated May 5, 2006, complained about being made to wait in the chow hall for six hours; (4) Grievance 2006177452, dated June 18, 2006, complained about television privileges during the NBA playoffs; (5) Grievance #2006202297, dated July 22, 2006, complained about not getting to shower; (6) Grievance #2006219457, dated August 6, 2006, complained about an officer who refused to let him go to the craft shop; (7) Grievance #2007016475, dated September 27, 2006, asked for certain medical restrictions to be

removed so that he could go to work in the commissary; and (8) Grievance #2007045830, dated November 14, 2006, asked why he had been removed from his job as a "support service" inmate. (Doc. # 22, Exhibit B).

The record shows that each of the eight step 1 grievances filed by Rodriguez was investigated and prison officials issued a response to each complaint. There is no evidence that Rodriguez was dissatisfied with the administrative response and there is no record that Rodriguez filed any step 2 grievance to appeal the result that he received. A Texas prisoner must pursue a grievance through both steps to satisfy the exhaustion requirement. *See Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004) (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)). Because Rodriguez did not complete both steps of the administrative remedy process available at TDCJ, he did not exhaust his remedies. *See id.*

More importantly, a review of the grievances filed by Rodriguez show that none of them complain about his medical condition or his medical care, meaning that Rodriguez failed to present any of the claims raised in the pending complaint for administrative consideration. Rodriguez was required to present his claims concerning his medical condition to prison officials through the administrative grievance process. *See, e.g., Kuykendall v. Texas Dep't of Criminal Justice*, 78 Fed. App'x 928, 2003 WL 22427398 (5th Cir. Oct. 23, 2003) (unpublished) (holding that the plaintiff was required to exhaust administrative remedies regarding his claim that prison officials failed to provide adequate medical care or treatment for his Hepatitis C). Because Rodriguez failed to do so, he did not

exhaust his administrative remedies in compliance with prison procedures by properly presenting the substance of his claims for consideration and review.

The Supreme Court has emphasized that the exhaustion requirement found in the PLRA, 42 U.S.C. § 1997e(a), mandates "proper exhaustion," *Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct. 2378, 2387 (2006), which demands compliance with prison procedural rules. As the Supreme Court has recognized, "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter*, 534 U.S. at 524. By requiring exhaustion of administrative remedies, Congress hoped that "corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id.* (citing *Booth*, 532 U.S. at 737). In addition to filtering out potentially frivolous claims, Congress also believed that internal review would facilitate adjudication of cases ultimately brought to court by giving prison officials an opportunity to develop an administrative record that clarifies the contours of the controversy. *Id.* (citations omitted).

Because § 1997e(a) expressly requires exhaustion, prisoners may not deliberately bypass the administrative process by flouting an institution's procedural rules. *See Woodford*, 126 S. Ct. at 2389-90. By failing to complete the grievance procedure in place at TDCJ, Rodriguez has bypassed available administrative remedies. *See Carbe v. Lappin*, 492 F.3d 325, 238 (5th Cir. 2007). This violates the PLRA's exhaustion requirement found in § 1997e(a), which mandates exhaustion *before* filing suit. *See Underwood v. Wilson*, 151

13

F.3d 292, 296 (5th Cir. 1998) (affirming the dismissal even under circumstances that would seem "inefficient"). Rodriguez's failure to present his claims properly in step 1 and step 2 of the grievance process means that he has failed to comply with prison procedures or complied with the exhaustion requirement found in § 1997e(a). Accordingly, the defendants are entitled to summary judgment on this issue.

### C. Defendants' Remaining Arguments

The defendants argue in the alternative that Rodriguez's claims fail for other reasons. In particular, the defendants argue that they are entitled to immunity from Rodriguez's claims for monetary damages under the Eleventh Amendment and that they are entitled to qualified immunity from suit against them in their personal capacity because, absent a showing that Rodriguez exhausted his administrative remedies by completing the grievance process, the defendants had inadequate notice of his claims. The defendants maintain further that Rodriguez has failed to allege sufficient facts showing that the defendants had the requisite personal involvement with his claims or with any constitutional violation.

Because Rodriguez's claims are either barred by the statute of limitations or by his failure to exhaust administrative remedies, the Court need not consider the defendants' remaining arguments that sovereign and qualified immunity preclude recovery of monetary damages. Under the circumstances of this case, it would be premature to decide these issues.[5] Accordingly, the Court grants the motion for summary judgment and dismisses the

---

[5] The Court notes that, in addition to his claims for monetary damages, Rodriguez seeks
(continued...)

complaint as barred by the statute of limitations and by the plaintiff's failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a). The defendants' remaining arguments are therefore moot.

## IV. CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1. The defendants' motion for summary judgment (Doc. # 22) is **GRANTED** as to the defense of limitations and the plaintiff's failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a). The defendants' remaining arguments and the defendant's motion for partial dismissal (Doc. # 21) are **MOOT**.

2. The complaint in this case is **DISMISSED** with prejudice.

The Clerk is directed to provide a copy of this order to the parties.

SIGNED at Houston, Texas, on June 10th, 2008.

_____
Nancy F. Atlas
United States District Judge

---

[5](...continued)
injunctive relief. "Neither absolute nor qualified personal immunity extends to suits for injunctive or declaratory relief under § 1983." *Chrissy F. by Medley v. Mississippi Dep't of Public Welfare*, 925 F.2d 844, 849 (5th Cir. 1991) (citations omitted); *see also Williams v. Ballard*, 466 F.3d 330, 334 n.7 (5th Cir. 2006) ("Qualified immunity does not protect officials from injunctive relief.") (citing *Orellana v. Kyle*, 65 F.3d 29, 33 (5th Cir. 1995)). The defendants have not provided the Court with any of Rodriguez's medical records. Because Rodriguez's claims are barred at this time for reasons discussed in more detail above, the issue of his eligibility for injunctive relief is not yet ripe.